GERD HENRY COLEMAN

v.

GEORGE R. COLEMAN et al.

Opinion filed June 23, 1905.

1. DEEDS—when deed to minor children will be regarded as de-livered. A deed made to minor children by the direction of their father, for land purchased by him with his money, will be regarded as delivered to the children though handed by the grantor to the father, who recorded the deed and kept it in his possession during his lifetime, renting the land and taking the rents and profits while he lived.

2. SAME—what tends to show intention to vest title in grantees at once. By having the title to land conveyed to the minor children of the purchaser for the purpose of defeating any claims of the pur-chaser's wife to the property, the purchaser evidences an intention to have the title vest at once in the children.

3. SAME—when retention of deed does not overcome presump-tion of delivery. The presumption of delivery of a deed to minor children which was executed in their names, as grantees, by the di-rection of their father when he purchased the land, is not overcome by any presumption arising from the fact that the father kept the deed in his possession until his death, since he is the natural guard-ian of the children and the proper custodian of their deed.

4. SAME—what shows acceptance of deed. Refusal by a grantee, who was present at the execution of the deed which was turned over by the grantor to the grantee's father, to subsequently make a deed of his interest to the father shows an acceptance, upon his part, of the former deed.

APPEAL from the Circuit Court of Champaign county; the Hon. SOLON PHILBRICK, Judge, presiding.

This is a bill for partition of eighty acres of land, being the west half of the south-west quarter of section 9, town-ship 20 north, range 14 west of the second principal merid-ian, filed on November 19, 1903, in the circuit court of Champaign county, where the land was situated, by the appellees, George R. Coleman and Jennie Minnie Onnen, against the appellant, Gerd Henry Coleman, and the appel-lees, Henry Johnson, administrator of the estate of Harm

Coleman, deceased, and Isaac Groves. Default was entered against Isaac Groves, mortgagee, and answers were filed by the appellant, Gerd Henry Coleman, and the appellee, Henry Johnson, administrator. The cause was referred to a master who took testimony, and made a report stating his conclusions. Exceptions were made to the report, but the exceptions were overruled, and the report was confirmed. The final decree of the court was in accordance with the findings of the master's report.

The decree of the court below, entered on the 9th day of May, 1904, found that the appellee, George R. Coleman, was seized in fee of and entitled to an undivided one-third interest in said land under a deed from one William J. Clark and wife, and that he was seized in fee of an undivided one-third of two-thirds of said land, as one of the heirs-at-law of his father, Harm Coleman, deceased, making in all five-ninths of said premises, subject to his proportionate share of certain mortgage indebtedness therein named; and that the appellee, Jennie Minnie Onnen, was the owner in fee of and entitled to an undivided one-third of two-thirds of said land, amounting to two-ninths thereof, subject to her proportionate share of said mortgage indebtedness, as one of the heirs of Harm Coleman, deceased; and that the appellant, Gerd Henry Coleman, was the owner seized in fee simple of and entitled to an undivided one-third of two-thirds, or two-ninths of the said premises, subject to his proportionate share of the said mortgage indebtedness, and subject also to the entire amount of a certain other mortgage indebtedness, and subject to a certain judgment set forth in the decree. The decree also appointed commissioners, and provided for a sale of the property in case the commissioners should report that it was not susceptible of division. The present appeal is prosecuted from the decree so entered.

The material facts of the case, as gathered from the pleadings, proofs, master's report, and decree, are substantially as follows:

On August 16, 1903, one Harm Coleman, otherwise called Hiram Coleman, of Champaign county, died intestate, leaving him surviving no widow, but leaving the appellee, George R. Coleman, and the appellant, Gerd Henry Coleman, his sons, and the appellee, Jennie Minnie Onnen, his daughter, as his only children and heirs-at-law. On March 4, 1889, Harm Coleman bought the land in question, and paid for it with his own money, from one William J. Clark. William J. Clark and his wife executed a warranty deed, dated March 4, 1889, conveying said premises to George R. Coleman, Jennie Minnie Coleman, (afterwards Jennie Minnie Onnen,) and Gerd Henry Coleman, the three children of Harm Coleman, and delivered said deed to Harm Coleman. Harm Coleman, the father of the three grantees in the deed, received the same and recorded it in the recorder's office of said county on March 15, 1889. He went into possession of the land, and occupied it, and used and enjoyed the rents, issues and profits thereof until about two years before his death. During these two years he rented the land, and was in possession through his tenant and received the rents and profits until his death. He paid the taxes upon the land up to the time of his death. The deed was found among his private papers after his death.

The deceased Harm Coleman was living with a second wife, and had children by her. The testimony showed that some trouble existed between Coleman and his second wife. His wife died in 1900. He built a house and barn upon the premises, and made other improvements thereon, costing about $1000.00. The deed Clark delivered to Harm Coleman was made subject to a mortgage of $1400.00. This mortgage appears to have been renewed several times. It was renewed on July 10, 1897, by the execution of a mortgage on that day by the three children, George R. Coleman, Minnie Hubbart, (who had married a man by the name of Hubbart, and, after his death, a man by the name of Onnen), and the appellant, Henry Coleman. It was again renewed on July 5,

1902, by the execution of another mortgage for the same amount, to-wit, $1400.00, to Isaac Groves, which mortgage was executed by the appellee, George R. Coleman, and his wife, and by the said Harm Coleman, a widower.

The appellant, Gerd Henry Coleman, became indebted to one James G. Oldham for borrowed money to the amount of $1000.00 and executed his note for that amount, dated January 22, 1902, with his brother, George R. Coleman, and his sister, Jennie Minnie Onnen, as sureties thereon. The note was a judgment note, and judgment was entered up on the same on July 24, 1902, against Gerd Henry Coleman in favor of the said Oldham for $1085.39, and execution was issued thereon. Harm Coleman advanced a part of said judgment for his son, Gerd Henry Coleman, and reduced the sum to $600.00. On August 15, 1902, Harm Coleman and George R. Coleman, at the request of Gerd Henry Coleman, procured a loan from Isaac Groves for $600.00, subject to the said mortgage of $1400.00, and paid Oldham the balance of the judgment. By agreement between the parties, the mortgage indebtedness of $600.00 was to be made a lien upon the interest of Gerd Henry Coleman, and the interests of George R. Coleman and Jennie Minnie Onnen were to be free from the same. Henry Johnson was appointed administrator of the estate by the county court of Champaign county. After the death of Harm Coleman, and on March 17, 1904, a quit-claim deed was executed by William J. Clark and his wife, conveying the said premises to George and Henry Coleman, and Minnie Onnen, the three children above named. In August, 1901, or about that time, Gerd Henry Coleman, and his sister, Jennie Minnie Onnen, made a deed conveying their interest in the property to their father, Harm Coleman, and at that time George R. Coleman was requested to make a deed to his father, but declined to do so, and never did execute such deed.

THOMAS J. SMITH, for appellant.

J. O. CUNNINGHAM, and FRANK H. BOGGS, for appellees.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

The contention between the parties here is as to the extent of the interests, owned by them in the property. The deed, made by William J. Clark and his wife on March 4, 1889, was made to George R. Coleman, Gerd Henry Coleman, and Jennie Minnie Coleman, the three children of Harm Coleman, as grantees, they being all at that time minors, George being seventeen years old, Minnie fifteen years old, and Gerd Henry thirteen years old. Gerd Henry Coleman and Jennie Minnie Onnen made deeds to their father, Harm Coleman, in his lifetime, but George R. Coleman declined to do so. Therefore, when Harm Coleman died, the title to an undivided two-thirds interest in the property stood in him, and the title to an undivided one-third interest therein was in George R. Coleman. George R. Coleman claims that he owned one-third of the property before his father's death, and that the other two-thirds, the title to which stood in his father at the time of the latter's death, descended to himself and his brother and sister, the three children of the deceased Harm Coleman. If the ownership was really as thus stated, then George R. Coleman was the owner of one-third of the property by virtue of the conveyance to him from Clark, and was the owner of one-third of the two-thirds conveyed to his father, as one of the three heirs of the latter. This interest amounted to five-ninths, while the interest of Gerd Henry Coleman and Jennie Minnie Onnen would each be one-third of two-thirds, or each would be the owner of two-ninths. The contention of George R. Coleman is concurred in and assented to by his sister, Mrs. Onnen.

It is claimed on the part of the appellant that the deed from William J. Clark to Harm Coleman's children was never delivered to the three children, who were grantees therein, and, therefore, never took effect as a conveyance of

a one-third interest to each of the children. The theory of the appellant is that, when Harm Coleman died, he was the equitable owner of the property, and equitably entitled to receive a deed of the same from William J. Clark; and it is said by the appellant that each of the children, upon the death of their father, inherited one-third of the property as an equitable owner thereof, and became the legal owner of such one-third by the deed, subsequently executed to them by William J. Clark and his wife on March 17, 1904. In other words, appellant claims that he and his brother and sister are now each entitled to an undivided third of the property, while the appellees, George R. Coleman and his sister, Mrs. Onnen, claim that George R. Coleman is the owner of five-ninths of the property, and each of the other heirs of only two-ninths thereof.

The only material question in this case, therefore, is whether or not the deed, executed by William J. Clark and his wife on March 4, 1889, was or was not delivered to the grantees therein.

There certainly was not an actual manual handing of the deed made by Clark, to the three children, therein named as grantees. He handed or delivered the deed, when he executed it and received the purchase money, to Harm Coleman. He swears in his testimony that he understood that, by executing the deed, he was conveying title to the children, and that he delivered the deed to Harm Coleman for the children. Harm Coleman, as the father of the children, was their natural guardian. Under such circumstances it is the duty of the parent, as the natural guardian of the children, to accept and preserve the deed for them. In *Hayes* v. *Boylan,* 141 Ill. 400, it was said (p. 406) : "Where a parent executes a deed to an infant child, which is beneficial to the child, and manifests by his words and conduct, that he intends that the deed shall operate at once, a delivery will be presumed, and proof of actual delivery is unnecessary; * * * and it is the duty of the parent as his natural guardian to accept and

preserve the deed for him.—*Bryan* v. *Wash,* 2 Gilm. 557; *Masterson* v. *Cheek,* 23 Ill. 72; *Newton* v. *Bealer,* 41 Iowa, 334." A delivery to the agent of the grantee has the same effect as a delivery directly to the grantee. (*Clark* v. *Harper,* 215 Ill. 24). A deed may be delivered to a third person for the benefit of the grantee, and, if the grantee subsequently accepts the deed, the delivery is as good as though made directly to the grantee. (*Rodemeier* v. *Brown,* 169 Ill. 347; *Walter* v. *Way,* 170 id. 96).

It is to be noted here that the deed was not executed, as was the case in many of the authorities referred to by counsel, by the father to his children, but the deed was executed by a third person, to-wit, William J. Clark, and delivered by such third person to Harm Coleman for his children. Here, the three children, who were grantees in the deed, were minors; and the law presumes more in favor of the delivery of deeds in case of voluntary settlements, especially when made to infants, than it does in ordinary cases of bargain and sale. Where the grantee is an infant, the presumption of acceptance is a rule of law, and knowledge of the conveyance and of its acceptance is not necessary. (*Winterbottom* v. *Pattison,* 152 Ill. 334; *Hayes* v. *Boylan, supra; Walter* v. *Way, supra*). In this respect the case at bar is distinguishable from the case of *Wilenou* v. *Handlon,* 207 Ill. 104, because, in the latter case, the grantees were all of age, so that the presumption of delivery in their favor did not obtain. Here, it is admitted in the answer that "the said William J. Clark executed a warranty deed (his wife, Mahala Clark, joining in the said deed,) and delivered said deed to the said Harm Coleman, and that the said George R. Coleman, Minnie Coleman, and this respondent, Gerd Henry Coleman, were named in said deed as grantees." The testimony shows clearly that Clark parted with all control over the deed when he delivered the same to Harm Coleman, and in about two weeks thereafter surrendered the possession of the property to Harm Coleman. As Harm Coleman was

not the grantee named in the deed, and the deed was beneficial to the grantees, and they were infants, a delivery is presumed. The unconditional delivery of a deed to a third person for the benefit of the grantee is a sufficient delivery of the same, if accepted by the grantee, and when the deed is unconditional and beneficial to the grantee, an acceptance will be presumed. (*Thompson* v. *Candor,* 60 Ill. 244; *Haenni* v. *Bleisch,* 146 id. 262). A delivery to a third person by authority, or with the assent of the grantee, is as effectual as a delivery to the grantee himself. (*Henrichsen* v. *Hodgen,* 67 Ill. 179; *Haenni* v. *Bleisch, supra*). The proof here shows that, when the deed was executed by Clark and handed to Harm Coleman, George R. Coleman, who was then seventeen years old, was present and had knowledge of the execution and delivery of the deed, in which he was a grantee.

It is true that the test, as to whether or not a deed has been delivered, is the intent, with which the act or acts relied on as the equivalent or substitute for actual delivery, were done, and this intent is to be gathered from the conduct of the parties, particularly the grantor, and all the surrounding circumstances. To constitute a sufficient delivery of a deed there must be a clear manifestation of the intention of the grantor, that the deed shall pass title at the time. (*Weber* v. *Christen,* 121 Ill. 91; *Bovee* v. *Hinde,* 135 id. 137). The appellant introduced proof, tending to show that there was some disagreement or difficulty between Harm Coleman and his second wife, who was living at the time of the execution of the deed. Appellant claims that the deed was made to the three children, instead of the father, Harm Coleman, in order to keep the property away from his second wife because of the disagreement between them. This being so, the object must have been to prevent the second wife from asserting or claiming dower in the premises. If this was the true reason for the execution of the deed to the children, then it must have been the intention of Harm Coleman that the deed should have immediate effect, and not that the vesting of the

title should be postponed until after his death, because his wife's interest would not have been defeated, unless the title vested at once in his children. In *Rivard* v. *Walker,* 39 Ill. 413, the bill showed upon its face that the complainant intended to part with the title to his lands by making a deed to his infant children for the purpose of placing them where they would be beyond the reach of debts contracted by his spendthrift wife, and the court there said that these objects "would not have been accomplished if the deed  *  *  * had not been intended to take immediate effect. Such being the intention of the grantor, he evidenced and consummated 'it by delivering the deed to the magistrate without any species of reservation, and directing him to have it recorded. This, in behalf of infant grantees, and when explained, as it is by the averments in the bill, will be regarded as an absolute delivery for the benefit of the infants, and the fact that the grantor afterward manifested to the recorder an intent not to part with all control over the deed cannot relieve him from the effect of such absolute delivery. By directing the deed to be recorded, and by its record, he gave to the public the most solemn assurances in his power that he had transferred his title to his children, and he cannot be permitted to resume it at pleasure, because he may have afterward inclined to regret his act."

In the case at bar, the deed, which was executed on March 4, 1889, was recorded by Harm Coleman on March 15, 1889. It is true that the recording of the deed is only *prima facie* evidence of delivery, and this *prima facie* evidence may be rebutted by testimony. (*Valter* v. *Blavka,* 195 Ill. 610). But it cannot be said here that there is sufficient evidence to rebut the *prima facie* proof of a delivery made by the recording of the deed. Several circumstances are insisted upon by appellant as amounting to such proof, as will overcome the *prima facie* case thus made. One of these circumstances is the one already referred to, to-wit, that the object of making the deed to the children was to de-

prive the second wife of any interest that she might have in the property. This circumstance indicates an intention that the deed should vest the title immediately in the grantees named therein. Another circumstance insisted upon is, that Harm Coleman retained possession of the deed, and it was found among his papers after his death. Inasmuch as the deed was in the nature of a voluntary settlement of the property upon the children of Harm Coleman, all of whom were minors, the presumption of a delivery of the deed in favor of minors will prevail over any contrary presumption, arising from the retention of the possession of the deed by the father. He being the natural guardian of his children, and the deed having been delivered to him for their benefit, he was the proper custodian of the deed for them as well as the holder of possession for their benefit.

It appears from the evidence that there was a mortgage of $1400.00 upon the property, when Clark deeded it to Harm Coleman. This mortgage was renewed in 1897, and the renewal mortgage was signed by the three children of Harm Coleman with his consent. The fact, that the three grantees in the deed from Clark, with the assent and approval of Harm Coleman, executed this renewal mortgage upon the property was a recognition on his part that the title was vested in them. Again, after Mrs. Onnen and the appellant had deeded their interest in the property back to their father in 1901, another renewal mortgage was executed in 1902 by Harm Coleman and his son, the appellee George R. Coleman. This act was another recognition on the part of Harm Coleman that the title to one-third of the property was at that time in his son, George R. Coleman.

It is true that Mrs. Onnen and the appellant executed a deed, conveying their interest in the property to their father in 1901. This circumstance, however, does not prove that they did this, because they recognized their father as the owner of the property, and entitled to a conveyance of what was his own. The proof shows that a judgment note had

been given by the appellant, and that George R. Coleman and Mrs. Onnen had signed this note as sureties for their brother, the appellant. When judgment was about to be entered upon this note, the appellant persuaded his sister, and tried to persuade George R. Coleman to convey the property back to their father. George R. Coleman refused to execute the deed. Appellant's object in this was to put the title in his father, so as to keep the property from being levied upon by the creditor, who was about to enter up judgment. The proof is quite conclusive that this was the object of the conveyance from two of the children to their father.

It is not only necessary to the complete execution of a deed that there should be a delivery of it, but that there should be an acceptance of it by the grantee. (*Moore* v. *Flynn,* 135 Ill. 74). The refusal of the appellee, George R. Coleman, to deed his interest in the property to his father, when he was requested to do so, indicates an acceptance of the deed on his part. He knew, when the deed was executed to him, that he was one of the grantees, because he was present at the execution; and subsequently when he refused to make the conveyance to his father, his act certainly amounted to an acceptance, if there was no acceptance in view of the presumptions and circumstances already mentioned.

The proof tends to show that, after the appellant and Mrs. Onnen had deeded their interest in the property to their father, the latter requested a deed from his son, George R. Coleman, of his interest in the property, but said request was refused. The proof shows, however, that it was made by the father, not because of any claim that he was actually the owner of the property, but for the purpose of borrowing money upon it by the execution of a mortgage to pay off the appellant's debt. As matter of fact, a second mortgage for $600.00 was executed upon the property by Harm Coleman, and his son, George, and the money thereby borrowed was used in the payment of the judgment entered up against the appellant.

After a consideration of all the evidence, we are of the opinion that there was a delivery of the deed from William J. Clark to the grantees therein named. The effect of that deed, and of the inheritance from his father, vested in the appellee, George R. Coleman, the title to five-ninths of the property. Accordingly, the decree of the circuit court was correct, and the same is affirmed.

*Decree affirmed.*