**O'BRIEN et al. v. GREENE PRODUCTION CO.**

**No. 14236.**

Court of Civil Appeals of Texas.
Fort Worth.

May 9, 1941.

Rehearing Denied June 13, 1941.

James S. Grisham, of Tyler, for appellants.

Fred T. Arnold and Tom M. Miller, both of Graham, and John S. Morris, of Fort Worth, for appellee.

BROWN, Justice.

Greene Production Company, a private corporation, owned a certain oil and gas lease on a tract of 8.2 acres of land in the T. E. and L. Co. Survey No. 465, in Young County, Texas, on which a well had been drilled to a small producer, and owned in connection with such well the casing, rods, tank and equipment on and in the well and premises, and desiring to have work done on such well in an attempt to make it a commercial producer, on November 2nd, 1938, made a written contract with one J. E. Worthy, whereby Worthy was to undertake, at his expense, to make the said well a commercial producer, within a period of three months from the date of the contract.

The contract provided that if Worthy's efforts were successful, Greene Production Company would assign to Worthy an undivided one-half interest in the leasehold, and same should be operated by Worthy, and the two parties to the contract would each receive one-half of the oil and gas runs, after the payment of reasonable operating expenses.

The contract further provided that if Worthy should determine that the well could not be made to produce oil or gas in paying quantities, then Worthy should have the right to remove from the premises any and all equipment that was bought and paid for by Worthy, but the equipment that was then upon the premises and owned by Greene Production Company should remain upon the lease as the property of said Company.

This contract was filed for record January 4th, 1939, and duly recorded on the 7th day of such month, in the Deed Records of Young County.

Although nothing was said in the said contract with respect to placing the contemplated assignment of an undivided one-half interest in the leasehold in escrow, yet it developed that this was done and such instrument was delivered to a bank in Graham, Texas, to be held until delivery was authorized.

Although Worthy had not made the well a commercial producer, in order to obtain a release of the said assignment to him, he, on February 7th, 1940, wired Mr. Greene, the president of said Company: "Wire release of assignment to bank running tank of oil tomorrow."

Acting upon this fraudulent telegram, Greene instructed the bank to deliver the assignment to Worthy, and it appears that Worthy filed same for record on February 8th, 1939, and same was duly recorded on February 17th, following.

This assignment purports to convey to Worthy an undivided one-half interest in the said oil and gas lease, "and all per-

sonal property used or obtained in connection therewith."

On July 27th, 1939, Worthy entered into a written contract with one Fred Sporer, whereby Worthy agreed to sell to Sporer the casing in the well, the tubing, the oil tank, a separator, all two inch pipe line connections and fittings, for $2,500 provided Sporer pulled the casing and plugged the well, according to the rules and regulations, and providing further that Sporer was not to remove any of the said equipment from the lease until it was paid for in full.

On August 31st, following, we find that Worthy and Sporer executed a bill of sale to one J. R. Tolbert, whereby they attempted to convey to Tolbert 1,555 feet of 6¼ inch casing, 1,450 feet of 8¼ inch casing and one 250 barrel tank for a consideration recited as $10, and other valuable consideration paid.

It appears that this personal property was taken from the lease and placed on a lot owned by one "Stubby" Stephens, in the City of Graham, on some date between July 27th, 1939, and August 31st of such year.

Led Taylor and Eddie Fulton filed suit in the District Court of Young County on June 6th, 1939, against Greene Production Company, J. E. Worthy, Pat O'Brien, Street Loan and Investment Company, a partnership composed of Bruce Street, Jr., Boyd Street and H. B. Street, and W. F. Ferguson, trustee for said partnership, and "Stubby" Stephens, and sought to establish and fix laborer's liens on the well above mentioned and its appurtenances, etc.

The petition alleges that Ferguson, trustee for Street Loan & Investment Company, is claiming a deed of trust lien against the said leasehold estate and has elected to advertise and sell the property under the terms of the deed of trust, on June 7th, 1939, and will do so unless restrained by the court. It is alleged that all of the other defendants are claiming some right to or interest in the properties, but that the rights and liens asserted by plaintiffs are superior to all such claimed by all the defendants.

The District Court granted the temporary injunction, as prayed for.

Greene Production Company answered, alleging that the plaintiffs did no work for it, but that if they performed any labor, they did so for Worthy.

By way of cross-action, it alleged that it owned the lease and the personal property thereon, and set out the substance of its contract with Worthy; that Worthy fraudulently obtained the assignment (referred to above) in that he did not make the well on the premises a commercial producer, and that Worthy had no interest in the well and its equipment; that Worthy fraudulently made to Street Loan & Investment Company, on February 17th, 1939, a deed of trust conveying the lease and all of the personal property thereon, to secure Worthy's note for $705 (including a separator), and that Worthy sold the separator and applied the proceeds to the payment of said note; that such act was a conversion of such property.

The pleader further asserts that Worthy hired the said Stephens and that Stephens has attempted to fix a laborer's lien on the premises, which constitutes a cloud on its title, and like allegations are made as to Fulton and Taylor, and it prays that the clouds be removed.

The pleader next refers to the contract that was wrongfully made by Worthy with Sporer, and alleged that Sporer made a contract with Pat O'Brien to pull the casing from the well and agreed to pay O'Brien the sum of $780.85 for such services and that O'Brien has attempted to fix a laborer's lien on the premises and property, and that such constitutes a cloud on its title.

The Production Company prayed for a cancellation of the instruments involved and for a removal of the clouds cast upon its property; and prayed for damages.

O'Brien sought by his pleading to hold the Production Company responsible for the labor done by him.

Worthy alleged in substance that all of his acts in the premises were done with the knowledge and consent of the Production Company.

On September 7th, 1939, said Production Company brought suit against Tolbert Drilling Company (which is in fact J. R. Tolbert, doing business under such name) for the title to and possession of the said personal property attempted to be sold to him by Worthy and Sporer, or the value of same.

Tolbert attempts to defend on the theory of being an innocent purchaser for value,

and seeks damages against the Production Company because it sequestrated the personal property from him and deprived him of its use.

The two suits and all attendant cross-actions were consolidated, and the causes were withdrawn from consideration by the jury and judgment rendered, in substance, as follows: That Taylor and Fulton have dismissed their cause of action as against all the defendants sued by them and that Greene Production Company has dismissed its cross-action against Taylor, Fulton and the members of the partnership of Street Loan & Investment Company; that J. R. Tolbert, Pat O'Brien, Fred Sporer and J. E. Worthy take nothing as against Greene Production Company; cancelled the assignment from the Production Company to Worthy and removed all attempted liens; gave the Production Company title to and decreed its possession of the said oil and gas lease and the said personal property and provided for a writ of possession and restitution, and specifically made provision for the payment of costs, and the judgment contains the general provision that "all relief not herein specially granted is hereby specially denied."

Worthy, Tolbert, O'Brien and Sporer excepted and gave notice of appeal, and O'Brien and Tolbert made a cost bond on appeal.

Tolbert predicates his appeal upon the theory that the contract between the Production Company and Worthy having been introduced in evidence as well as said assignment to Worthy of an undivided one-half interest in the lease and equipment, and both such instruments being on record when Tolbert attempted to purchase the personal property that was salvaged, these matters and facts constituted notice of Worthy's one-half interest in the property and his right to the management and control of same, and that under all of such facts, and the physical possession by Worthy of the personal property, he, Tolbert, is and was an innocent purchaser for value, and the judgment against him is erroneous.

■ We see no merit in the contention. These persons are dealers in and users of oil well equipment and must be held to the knowledge that all such persons must of necessity have with respect to the matters disclosed by this record.

When Tolbert insists that he has a right to rely upon the contract made by the Production Company and Worthy, and the assignment to Worthy, which was made under the contract, he must be held to a knowledge of the terms of such instruments and the actual rights that could be acquired thereunder.

Whatever rights could be obtained by Worthy were dependent upon making the well a commercial producer. Had he done this, then he would obtain an undivided one-half interest in the oil and gas taken from the producing well, after all reasonable expenses of production were first paid, and Worthy was to have the management and control of the producing well.

Worthy's rights, in the premises, were to to be in the properties on the lease, when and while the well was a commercial producer, and he could not become an owner of even an undivided one-half interest in the "salvage" until after the well was made a commercial producer and it had thereafter ceased to become such.

The language of the contract, upon which Tolbert says he relies, shows that Tolbert was put upon notice as to Worthy's rights to pull the casing from the well and attempt to sell it.

No one in the line of business here under observation pulls the casing from and "salvages" the equipment of a producing well, and plugs the well.

Of all these common facts, Tolbert must of necessity have had knowledge.

Viewing the facts in the light most favorable to Tolbert, he must be held to have known that Worthy could never obtain more than an undivided one-half interest in the properties, and when he attempted to sell the entire interest, this was a fact that put Tolbert on notice as to Worthy's right to pass the title.

Tolbert's assignments of error are overruled.

O'Brien predicates his appeal on the theory that the Production Company is estopped to deny O'Brien's right to his debt and foreclosure of his lien, under his contract with Sporer to "salvage" the personal property, because he, O'Brien, did not know of any fraud practiced by Worthy and the Production Company did nothing to stop Worthy until after O'Brien had done the work.

904

What we have said in relation to the knowledge of Tolbert applies equally as well to O'Brien. A reading of the instruments on record and a bit of prudent inquiry would have disclosed to any reasonable man that neither Sporer, who had contracted with Worthy to "salvage" the equipment on the well, nor Worthy, even if O'Brien had contracted with Worthy, could bind the Production Company for O'Brien's services, or that O'Brien could fix a lien against the properties for such labor.

It is equally certain that Worthy is not liable to O'Brien under the contract O'Brien made with Sporer, and O'Brien is not entitled to a judgment for his debt as against Sporer because he did not pray for any such relief, as is disclosed by his pleadings.

In his pleading O'Brien asserts that he dealt with Sporer, "who had apparent authority to employ this defendant to pull the casing from the Morrison Well, etc." and he seeks to hold the Production Company and Worthy liable therefor, and not Sporer. In fact, his cross-action names the Production Company and Worthy as the defendants against whom he moves.

All of O'Brien's assignments of error are overruled.

The judgment is affirmed.